*Sugarbush Rowhouse Ass'n v. Oppenheimer*, No. 580-9-16 Wncv (Teachout, J., Oct. 31, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 580-9-16 Wncv** |

**SUGARBUSH ROWHOUSE ASSOCIATION**
  **Plaintiff**

  **v.**

**KENNETH OPPENHEIMER et al.**
  **Defendants**

### DECISION
### Defendants' Motion for Summary Judgment

Plaintiff Sugarbush Rowhouse Association initiated this case seeking declaratory and injunctive relief against Defendants Kenneth Oppenheimer and Paula Friedman to require them to undo exterior alterations to their rowhouse in violation of an allegedly controlling Declaration of Restrictions and Covenants and associated bylaws.[1]  Defendants filed a motion for summary judgment, arguing that the Declaration is not enforceable because it was never fully executed by all the rowhouse owners.  The Plaintiff argues that it is binding on Defendants, or alternatively that the Declaration is ambiguous and should be resolved on the evidence, although both sides argue that the document is unambiguous and should be interpreted as each proposes.

Oral argument on the motion was heard on October 23, 2017.  Plaintiff is represented by Attorney Christopher J. Nordle and Defendants are represented by Attorney Christopher J. Smart.

*Undisputed Facts*

Defendants own one rowhouse in a development of 10.  It is unclear when they were built, but Defendants' father originally acquired theirs in 1976.  Each rowhouse sits on a distinct, separately owned parcel.  There are no facts to show that, prior to 2007, the development was subject to a declaration conforming to either the Condominium Ownership Act, 27 V.S.A. §§ 1301–1365, or the Uniform Common Interest Ownership Act, 27A V.S.A. §§ 1–101 to 4–120, or that any applicable easements or covenants were established in the original subdivision.  Beginning in the 1970's, owners met annually and shared common expenses on an informal basis.

---

[1] Defendants Kenneth Oppenheimer and Paula Friedman are brother and sister and own the rowhouse at issue in this case.  Their deceased brother, Peter Oppenheimer, also is named as a defendant.  However, there is no dispute that he sold his interest in the rowhouse to his siblings prior to death and there is no indication that his estate claims any interest in it now.  It is alleged, however, that the land records have not yet been updated to reflect his conveyance to his siblings.  Both parties agreed at the hearing on October 23, 2017 that this matter does not affect a ruling on Defendants' motion.

In 2007, an effort was undertaken to create an unincorporated association known as the Sugarbush Rowhouse Association and to subject the 10 rowhouses to a series of covenants and bylaws that the Association would administer.  (This was the second such effort, the first one not having come to fruition.)  A two-page document entitled "The Rowhouses Articles of Agreement and Declaration of Restrictions and Covenants" was circulated among the rowhouse owners for signature.  It identified the rowhouses by letters A through J.  Owners of 8 of the 10 rowhouses (B, D, E, F, G, H, I, and J), including Defendants (Rowhouse E), signed in 2007.  The owners of Rowhouses A and C did not sign in 2007.

In 2008, the owner of Rowhouse C signed, but only after crossing out Paragraph 5 of the Declaration and placing his initials next to the paragraph, indicating no agreement to that provision but agreement with the remaining provisions.  There is no evidence that any other owner ever signed a version of the Declaration that omitted Paragraph 5.

In 2010, the Declaration (without a signature for Rowhouse A and with paragraph 5 crossed out and initialed only by the owner of Rowhouse C) was recorded in the Warren land records.

In 2015, Defendants improved their deck and added a mudroom, which, if the Declaration is enforceable against them, would be in violation of Paragraph 6 of the Declaration, which requires Association consent to exterior alterations. Over the next several months, during late 2015 and early 2016, other owners complained about lack of compliance with the Declaration, and the Defendants responded that it was not enforceable.

In 2016, after attempts to resolve the issue amongst the owners failed, the owner of Rowhouse A executed a document indicating assent to the Declaration.

*Analysis*

The dispute is whether the Declaration creating the Association and imposing the restrictions ever came into effect, and if so, whether it is enforceable against the Defendants.

The Defendants interpret the Declaration as a mutual executory contract in which all owners had to agree to subject themselves to its reciprocal burdens.  Without unanimous agreement as to all terms, they argue, the restrictions did not come into effect at all.  They further argue that Rowhouse C owner's act of crossing out Paragraph 5 created a rejection of the initial offer to make an agreement and a counteroffer back to the other owners with modified terms, who never accepted it.  They argue that the Rowhouse A owner's signing in 2016 was long out of time and ineffective.

The Plaintiff views the Declaration as a series of negative easements conveyed by each signatory owner to all other owners that became binding on each signatory owner upon execution, and that each conveyance is legally effective and independent from the others.  In the Plaintiff's view, it does not matter who else executed the Declaration because in 2007 Defendants did.  To the Plaintiff, it is irrelevant that the Rowhouse C owner struck paragraph 5

2

or that the Rowhouse A owner did not execute it until 2016.

As a matter of law, there are two methods of creating a servitude: by conveyance in an instrument such as a deed, or by contract. "To create a servitude, a contract or conveyance must meet local law requirements for contracts or conveyances involving interests in land." Restatement (Third) of Property (Servitudes) § 2.1 cmt. a. In this case, the language and format of the Declaration is not characteristic of a conveyancing instrument. Rather, the language consistently uses terms representing an "agreement" and the form is that of a contract with mutual executory obligations. By its terms, it purports to create a system of mutually enforceable servitudes as a contractual arrangement among the many rowhouse owners. Each execution of the Declaration is not a separate *conveyance* that became binding on the signatory owner in relation to all others merely upon execution by that owner. Rather, each execution was an agreement to the proposed terms in the document, which called for mutually enforceable restrictions.

The Declaration plainly contemplates that all owners would sign and subject themselves as well as their successor owners to a series of mutually beneficial covenants designed largely to protect their joint aesthetic interests. The Declaration identifies in its terms all the owners by name and clearly anticipated that all of them would sign. It refers to them collectively throughout. Any particular owner in 2007 contemplating signing the Declaration would reasonably understand that it was intended to apply to the entire development. There is no reasonable interpretation of the Declaration to the effect that each owner, by signing, was unilaterally and gratuitously conveying property interests in his or her own rowhouse to be enforced by others who had no reciprocal obligation to be subject to the same restrictions. The Declaration is not ambiguous as to its nature as a contract or as to the meaning of its terms.

Only 8 of the 10 rowhouse owners agreed to the Declaration in 2007. The owner of Rowhouse C agreed to most, but not all, terms of the proposed Declaration in 2008. That constituted a counteroffer to modify the terms of the full set of reciprocal obligations by eliminating one of them, but it was not an effective acceptance and execution of the Declaration. See Restatement (Second) of Contracts § 58 ("An acceptance must comply with the requirements of the offer as to the promise to be made or the performance to be rendered.").

The current owner of Rowhouse A agreed to the version of the Declaration that omitted Paragraph 5—the version with proposed modified terms--in 2016, after the dispute in this case had developed and long after any reasonable time for acceptance. See 1 Williston on Contracts § 5:7 (4th ed.) ("If no time is fixed in the offer within which acceptance must be made, it is a generally accepted rule of law that acceptance must be within a reasonable time."). As a matter of law, accepting in 2016 what was offered in 2007 is not reasonable. That "acceptance" therefore is ineffective.

The Declaration by its terms was intended to create mutually enforceable servitudes by contract, and it was intended to apply to all of the rowhouses. The same version, with identical terms, needed to be executed by the owners of all rowhouses in a reasonable time once circulated for signature in 2007. That never happened. The Declaration therefore never came into effect and Defendants were not bound by it when they undertook improvements to their rowhouse in

2015.  They are entitled to summary judgment.

ORDER

For the foregoing reasons, Defendants' motion for summary judgment is granted.

Dated at Montpelier, Vermont this _____ day of October 2017.


_____
Mary Miles Teachout
Superior Judge